**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                                )
**DEREK SINCERE BLACK WOLF CRYER,**    )
                                                )
     **Plaintiff,**              )
                                                )
     **v.**                     )        **Civil Action No. 11-10654-DJC**
                                                )
**LUIS SPENCER and THOMAS DICKHAUT,**  )
                                                )
     **Defendants.**             )
_____)


## MEMORANDUM AND ORDER

**CASPER, J.**                                              March 15, 2012

### I.    Introduction

      Plaintiff Derek Sincere Black Wolf Cryer ("Cryer"), an inmate at the Souza Baranowski

Correctional Center ("SBCC") in Massachusetts, brought this action against Luis Spencer,

Commissioner of the Massachusetts Department of Correction and Thomas Dickhaut,

Superintendent of the SBCC (collectively, "Defendants") seeking injunctive and declaratory relief

for his claims that the Defendants violated his state and federal Constitutional rights, the Americans

with Disabilities Act ("ADA"), 42 U.S. § 12101 _et seq_., and failed to comply with certain statutory

and regulatory duties with respect to double bunking at the SBCC and in denying him single cell

status.  The Defendants have now moved to dismiss the complaint under Federal Rule of Civil

Procedure ("Rule") 12(b)(6), or in the alternative, for summary judgment under Rule 56.  Cryer has

moved for a preliminary injunction.  For the reasons set forth below, the Defendants' motion to

dismiss is GRANTED in part and DENIED in part and Cryer's motion for preliminary injunction

is DENIED.

## II.    Burden of Proof and Standard of Review

To survive a motion to dismiss, a complaint "must 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,' and allege 'a plausible entitlement to relief.'" Decotiis v. Whittemore, 635 F.3d 22, 29 (1st Cir. 2011) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 559 (2007)).    To determine whether the factual allegations in the complaint are sufficient to survive a motion to dismiss, the Court "employ[s] a two-pronged approach." Soto-Torres v. Fraticelli, 654 F.3d 153, 158 (2011).    "The first prong is to identify the factual allegation and to identify statements in the complaint that merely offer legal conclusions couched as facts or are threadbare or conclusory." Id.  The second prong is to assess whether the factual allegations "'allow [ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. at 159 (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)).  If they do, "the claim has facial plausibility." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). "The make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." Soto-Torres, 654 F.3d at 159   (quoting Sepúlveda-Villarini v. Dep't. of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010)).  Moreover,  a *pro se* plaintiff, here Cryer, is entitled to a liberal reading of his allegations, no matter how inartfully pled.  See Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Rodi v. New Eng. Sch. of Law, 389 F.3d 5, 13 (1st Cir. 2004).

## III.    Factual Allegations

The following summary is based upon the factual allegations in the complaint which the Court must, for the purposes of the Defendants' motion to dismiss, accept as true.  Cryer is an

inmate at the SBCC serving a life sentence without parole. (Compl. ¶¶ 9, 27, 28). He is currently in a cell by himself, but seeks to maintain that in requesting single-cell status. (Cryer Aff. ¶ 41; Compl. ¶ D (relief requested)). He has been diagnosed with post-traumatic stress disorder, dysthymic disorder, panic disorder, agoraphobia, proptosis OD abnormal disorder, adjustment disorder, cognitive disorders and several personality disorders. (Compl. ¶ 4). Cryer alleges that he does not trust other inmates and believes they will kill him. (Compl. ¶ 11). He also threatens harm to any inmate whom the Defendants may place in his cell. (Compl. ¶¶ 5-9). According to Cryer, his psychiatrist has noted that if he were double-bunked, homicidal ideation would be present and he would be placed on "mental health watch"[1] and/or constantly taken into "segregation."[2] (Compl. ¶ 12, Ex. A at 30). Whether an inmate is given single cell status is based on certain criteria in the Classification Quay System. (Compl. ¶ 18). Cryer alleges that other inmates suffering from mental illnesses have obtained single cell status and that he is being denied single cell status because his mental disorders do not satisfy such criteria. (Compl. ¶¶ 19, 21). Defendant Dickhaut has denied Cryer's prior request for single cell status. (Compl. ¶ 20, Ex. C).

The Defendants have placed Cryer in disciplinary segregation and in a restriction unit for refusing a cell mate. (Compl. ¶¶ 23-24). Without single cell status, Cryer claims that he will be subjected to continued punishment and placed in segregation or the restriction unit. (Compl. ¶ 25).

---

[1]The complaint alleges that mental health watch involves an inmate being taken to the correctional facility's hospital unit under duress and without consent, stripped of all clothing, detained in a cold cell and prohibited from attending any religious, recreational or educational activities. (Compl. ¶ 15).

[2]Cryer alleges that segregation involves being removed under duress and without consent from the general population and restricted from attending any religious, recreational or educational activities. (Compl. ¶ 16).

Cryer has refused to be transferred to a medium security prison for fear that he would be forced to have a cell mate. (Compl. ¶ 26). He alleges that because of his mental disorders, he cannot be transferred to a medium security prison without single cell status as it would jeopardize his own safety as well as that of any inmate placed in the same cell. (Compl. ¶ 27).

## IV.  Procedural History

On April 8, 2011, Cryer filed a complaint alleging violations of his rights under the Eighth and Fourteenth Amendments of the United States Constitution, articles 1 and 26 of the Massachusetts Declaration of Rights and Title II of the ADA. (D. 1). Cryer also alleges that the Defendants have violated Mass. Gen. L. c. 124, § 1(q), c. 30A, c. 111 §§ 2, 5, 20, 21, and c. 127, § 22 as well as 105 C.M.R. § 450.320 and seeks immediate and preliminary injunctive relief as well as a declaratory judgment that he be given single cell status, that no inmate be placed in his cell and that he not be placed in any dormitory housing unit. (D. 1). Cryer moved for preliminary injunctive relief at the same time (as alleged in the body of the complaint). (D. 1). On April 27, 2011, after analyzing Cryer's request under the four-prong test for preliminary injunctive relief, D. 4 at 2, the Court denied Cryer's requests for injunctive relief without prejudice to renew after the Defendants had filed a responsive pleading or upon a motion filed in accordance with Fed. R. Civ. P. 65. (D. 4 at 5). After the Defendants moved to dismiss the complaint, (D. 14), Cryer opposed the motion and has now moved again for a preliminary injunction. (D. 21, 27).

## V.  The Defendants' Motion to Dismiss

### A.  Constitutional Claims

#### 1.  Eighth Amendment Claim

Cryer alleges the Defendants violated his Eighth Amendment rights under the United States

Constitution for failing to protect him and his fellow inmates from harm in denying his request for single cell status. (Compl. ¶¶ 39-41). The Eighth Amendment of the United States Constitution prohibits conditions of confinement that impose "unnecessary or wanton infliction of pain" on a prison inmate. Restucci v. Clarke, 669 F. Supp. 2d 150, 155 (D. Mass. 2009) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "[A] prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Mosher v. Nelson, 589 F.3d 488, 493 (1st Cir. 2009) (quoting Farmer v. Brennan, 511 U.S. 825, 828 (1994)) (internal quotation marks omitted). To establish an Eighth Amendment Claim against a prison official for failing to protect him, a plaintiff must first allege facts sufficient to show that "he [is] incarcerated under conditions imposing a substantial risk of serious harm." Burrell v. Hampshire Cnty., 307 F.3d 1, 8 (1st Cir. 2002) (citing Farmer, 511 U.S. at 834). Second, a plaintiff must demonstrate that the defendant was deliberately indifferent to the plaintiff's health or safety. Farmer, 511 U.S. at 834. A prison official can be held liable for acting with deliberate indifference only if "the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

Accepting as true all factual allegations in the complaint, Cryer sufficiently alleges that forcing him to double bunk poses a substantial risk of serious harm. Specifically, the complaint alleges that Cryer suffers from numerous mental illnesses and that he is fearful of his physical safety and that of any inmate who is placed in his cell. (Compl. ¶¶ 4-8). Given the allegations in the complaint that Cryer has the alleged mental disorders that may compromise his mental health and safety (as well as the safety of a cell mate) in a double-bunked cell, the Court finds that Cryer has

alleged a sufficiently serious deprivation.  See, e.g., Restucci, 669 F. Supp. 2d at 156 (finding plaintiff's allegation that his mental health issues would compromise his safety if he was placed in a double-bunked cell constituted a sufficiently serious deprivation);  see also Calderon-Ortiz v. LaBoy-Alvarado, 300 F.3d 60, 66 (1st Cir. 2002) (noting that "[t]he risk of inmate-upon-inmate violence has been held a sufficiently serious harm to implicate inmates' constitutional rights").

Cryer also adequately alleges that the Defendants have been deliberately indifferent to the substantial risk to his safety created by not providing him with single-cell status.  As discussed above, the complaint alleges that Cryer cannot adjust to a double occupancy cell or dormitory placement without creating a risk of harm to others or himself due to his various mental disorders and conditions.  The Court can reasonably infer that both the Defendants had knowledge of the substantial risk of harm if double bunked from Cryer's February 16, 2011 request for approval of single cell status which noted such issues and attached medical records with respect to his mental illnesses.  (Compl. ¶ 20, Ex. C).  By letter, dated March 2, 2011, Defendant Dickhaut denied Cryer's request for single cell status and copied Defendant Spencer on the letter addressed to Cryer. (Compl. ¶ 20, Ex. C).  The letter states that Dickhaut had reviewed Cryer's status and spoke to the Mental Health Department in concluding that nothing precludes Cryer from being double bunked. (Compl., Ex. C).  The First Circuit has noted that although double bunking is not a *per se* constitutional violation, "in rare cases [the policy of double-bunking] might amount to an unlawful practice when combined with other adverse conditions." Cote v. Murphy, 152 Fed. Appx. 6, 7 (1st Cir. 2005).  In light of Cryer's allegations in the complaint, including the allegations regarding his communications with the Department of Corrections referencing his mental health issues and safety concerns, Cryer has adequately alleged that the refusal to grant him single cell status amounted to

deliberate indifference to his health and safety. While the standard for deliberate indifference is quite high, Wilson v. Seiter, 501 U.S. 294, 304-05 (1991); Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir. 1988) and it is unclear, at this juncture, whether Cryer will satisfy his burden as to this claim on summary judgment or at trial, he has made sufficient allegations in the complaint as to his Eighth Amendment claim to survive the Defendants' motion to dismiss. Accordingly, the Defendants' motion to dismiss Cryer's Eighth Amendment claim is DENIED.

### 2. Fourteenth Amendment Claim

#### a. Substantive Due Process

The Fourteenth Amendment prohibits government action that deprives any person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The touchstone of due process is protection of the individual against arbitrary action of government." Wolff v. McDonnell, 418 U.S. 539, 558 (1974). The Due Process clause involves both procedural and substantive aspects. DePoutot v. Raffaelly, 424 F.3d 112, 118 (1st Cir. 2005). Whereas procedural due process ensures the adequacy of the government's procedures in effecting the deprivation of a protected right, substantive due process protects individuals from certain government actions, regardless of the procedure used to implement them. Id. That is, a substantive due process challenge requires the Court to "assess the constitutionality of the deprivation itself." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 880 (1st Cir. 2010). In alleging a violation of "due process," the complaint appears to allege a violation of Cryer's substantive due process rights under the due process clause, as opposed to a challenge to any government procedures. The Court will, therefore, construe the allegations in the complaint as comprising a substantive due process claim.

Read liberally, the complaint alleges a constitutionally protected liberty interest in safe

conditions at SBCC and that the Defendants infringed this right by failing to provide certain conditions of confinement - i.e., single cell status. "Among the other protections afforded by due process is the right to 'reasonable safety.'" Cote, 152 Fed. Appx. at 7 (quoting Youngberg v. Romeo, 457 U.S. 307, 324 (1982)). However, Cryer asserts his right to be held in safe conditions of confinement under the Eighth Amendment as well. Where, as here, his claim is "covered by a specific constitutional provision, such as the . . . Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." United States v. Lanier, 520 U.S. 259, 272 n. 7 (1997); Albright v. Oliver, 510 U.S. 266, 273 (1994) (noting that where a particular Amendment constrains the type of government action at issue, that Amendment not the more generalized notion of substantive due process guides the Court's analysis). The substantive due process clause affords convicted prisoners no greater protection than does the cruel and unusual punishment clause under the Eighth Amendment. Whitley v. Abers, 475 U.S. 312, 327 (1986). Accordingly, in light of the Cryer's Eighth Amendment claim and the Court's finding that such claim has been sufficiently pled, the Court construes Cryer's substantive due process claim as no more than the Eighth Amendment claim, which survives the instant motion to dismiss.

### b.    Equal Protection

The Equal Protection Clause of the Fourteenth Amendment requires that "similarly-situated persons . . . receive substantially similar treatment from their government." Tapalian v. Tusino, 377 F.3d 1, 5 (1st Cir. 2004). Its purpose "is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" Village of Willowbrook v. Olech,

528 U.S. 562, 564 (2000) (quoting Sioux City Bridge Co. v. Dakota Cty., 260 U.S. 441, 445 (1923))

(further citation omitted). To state a plausible equal protection claim, a plaintiff must show that he

has "been intentionally treated differently from others similarly situated and that there is no rational

basis for the difference in treatment." Olech, 528 U.S. at 564. The complaint must "allege facts

indicating that, compared with others similarly situated, [he] was selectively treated . . . based on

impermissible considerations such as race, religion, intent to inhibit or punish the exercise of

constitutional rights, or malicious or bad faith intent to injure a person." Barrington Cove Ltd.

P'ship v. R.I. Hous. & Mortg. Fin. Corp., 246 F.3d 1, 7 (1st Cir. 2001) (alterations and internal

quotation marks omitted). The allegations in the complaint must put forth facts identifying those

with whom he is similarly situated and identify the specific instances where those similarly situated

persons "'in all relevant aspects' were treated differently . . . .'" Rubinovitz v. Rogato, 60 F.3d 906,

910 (1st Cir. 1995) (quoting Dartmouth Review v. Dartmouth College, 889 F.2d 13, 19 (1st Cir.

1989)).

Even construed liberally, the complaint does not make sufficient allegations to state a

plausible equal protection claim. Although Cryer alleges that other inmates have been provided

single cell status due to their mental illnesses, while he has not been afforded the same status in light

of his mental health issues, (Compl. ¶ 21), his complaint concedes that he has been denied single cell

status, not because of any intentional or arbitrary discrimination on the part of Defendants, but

because he does not meet certain criteria under the Classification Quay System. (Compl. ¶ 18). In

fact, Cryer's allegation that he has been denied single cell status because he does not satisfy the

Classification Quay System requirements cuts against any fair inference the Court could draw from

the allegations in the complaint that such denial was based on any intentional discrimination on the

part of the Defendants.  Rather, Cryer's allegation of the reason for the Defendants' denial of his single cell status (applying the criteria of the single cell qualification system) suggests a rational basis for the difference in classification (and treatment) among inmates with mental illnesses.  Thus, the allegations in the complaint are insufficient to state a plausible equal protection clause claim. See Restucci, 669 F. Supp. 2d at 158 (dismissing plaintiff's equal protection claim for failure to allege that other inmates similarly situated to him were not ordered double-bunked and or that the process by which the prison decided which inmates would be double-bunked was discriminatory).

**B.     ADA Claim**

Title II of the ADA, the provision at issue here, prohibits discrimination against persons with disabilities by "public entities" which includes a state's correctional facilities.  Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 209-10 (1998).  To state a plausible ADA claim, a plaintiff must demonstrate that:  "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability."  Parker v. Universidad de P.R., 225 F.3d 1, 5 (1st Cir. 2000).  The ADA defines a "qualified individual with a disability" as an "individual with a disability who, with or without reasonable modifications . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  42 U.S.C. § 12131(2).

The Defendants acknowledge that Title II of the ADA applies to correctional facilities like the SBCC and do not necessarily dispute that Cryer has sufficiently alleged that he has a qualifying disability.  (Def. Memo. at 10-11).  Rather, the Defendants argue that Cryer has failed to allege he

was denied single cell status because of his alleged disability. (Def. Memo. at 11). A prisoner must allege that he has a disability and that he was excluded from services or benefits or otherwise discriminated against "by reason of [his] disability." Mitchell v. Mass. Dep't. of Corr., 190 F. Supp. 2d 204, 211 (D. Mass. 2002). Here, Cryer has not sufficiently alleged in the complaint that he has been denied single cell status because of his disability as required to state a plausible ADA claim. Although Cryer argues in his opposition to the motion to dismiss that he has sufficiently pled an ADA claim because "defendants have excluded me from the single cell program based solely on the titles of my mental illnesses; they have plainly said that they don't accept or allow prisoners with mental disorders such as Plaintiff's to participate in their program, even though one of the criteria's to obtain single cell status is mental health issues," Pl. Opp. at 5, even a liberal construction of the complaint does not give rise to a plausible basis for an ADA claim. In fact, Cryer appears to acknowledge in the Complaint that other prisoners with mental illnesses have been granted single-cell status, but he has been denied such status not because of his mental illnesses per se, but because "his mental illnesses does not meet the prison's single cell prerequisites." (Compl. ¶¶ 18-21). Accordingly, the Defendants' motion to dismiss the ADA claim is GRANTED.

### C. Claims Under Massachusetts Statutory Law and Regulations

Cryer alleges violations of Mass. Gen. L. c. 124, § 1(q) (authority of commissioner of correction to make and promulgate regulations concerning, among other things, safety and care of inmates), c. 111, § 2 (duties of the commissioner of the public health department), id., § 5 (powers and duties of the department of public health), id., § 20 (the public health department's inspection of correctional institutions), id., § 21 (the department's authority to implement rules and regulations for prisons and houses of correction regarding, among other things, the general health and safety of

inmates) and c. 127, § 22 (requiring that "nor, unless the crowded state of the institution so requires, shall any two prisoners, other than debtors, be allowed to occupy the same room, except for work").

Where, as here, a plaintiff attempts to bring a private cause of action under a statute, there must be clear legislative intent to infer that a private cause of action exists. Loffredo v. Ctr. for Addictive Behaviors, 426 Mass. 541, 543 (1998) and cases cited. "Elementary rules of statutory construction require that each statute be interpreted as enacted." Commonwealth v. Gove, 366 Mass. 351, 354 (1974). Here, the words of each Massachusetts statute allegedly violated by the Defendants does not expressly create a private cause of action. Although whether a private cause of action can also be implied from the legislative history of a statute, Loffredo, 426 Mass. at 543, such is not the case here. Cryer neither alleges nor argues in his opposition that the legislature intended (either expressly or implied) to create a private cause of action for violations of the respective statutes he alleges the Defendants have violated. Because a plaintiff cannot ground a cause of action in a statute, where that statute neither expressly creates a private right of action nor suggests through its legislative history that one was intended, Borucki v. Ryan, 407 Mass. 1009, 1009-1010 (1990), as is the case here, Cryer has no standing to bring claims based on violations of such statutes or obtain the declaratory and injunctive relief he requests based on such claims.

Cryer further alleges that the Defendants have violated 105 C.M.R. § 451.320, as promulgated pursuant to the public health department's authority under Mass. Gen. L. c. 111, by failing to ensure that the cells at SBCC comply with the regulation's cell size requirements and requests that this Court enforce such regulation against the Defendants. Pursuant to 105 C.M.R. § 451.320, "[e]ach cell or sleeping area in an existing facility should contain at least 60 square feet of floor space for each occupant, calculated on the basis of total habitable room area, which does

not include areas where floor-to-ceiling height is less than eight feet." This regulation does not "require[ ]" correctional facilities, like SBCC, to ensure that its cells comply with the regulation's size requirements; it only "recommend[s]" that correctional facilities do so. Compare 105 C.M.R. § 451.012 ("[T]o provide physical living conditions adequate to maintain the health and safety of inmates of correctional facilities, the Department, pursuant to M.G.L. c. 111, § 5, recommends that each correctional facility comply with the *Recommended Minimum Health and Sanitation Standards* set forth in 105 C.M.R. § 451.320 though 105 C.M.R. § 451.390 (.300 series)" (emphasis in original)) with 105 C.M.R. § 451.011 ("Each correctional facility is required by M.G.L. c. 111, § 21 to comply with Required Minimum Health and Sanitation Standards set forth in 105 C.M.R. 451.101 through 105 C.M.R. 451.214 (.100 and .200 Series). Officials responsible for maintaining correctional facilities are responsible, under M.G.L. c. 111, § 21, for enforcing these Required Standards"). That is, contrary to Cryer's assertion otherwise, (Compl. ¶ 43), the regulation he seeks to enforce is not a "mandatory" directive for correctional facilities.

Moreover, to the extent Cryer attempts to bring a cause of action directly under 105 C.M.R. § 415.320, the Massachusetts Appeals Court has stated that "[public health] regulations do not create a private right of action for inmates in Massachusetts." Ferreira v. Dennehy, 81 Mass. App. Ct. 1114 (2012) (Table); Hudson, 46 Mass. App. Ct. At 548 n. 18.[3]

---

[3]Even if he had standing to bring this claim as a private right of action, a plaintiff seeking to enforce a regulation allegedly violated by the Defendants must first exhaust the available administrative remedies, which includes complying with the inmate grievance procedures outlined in 103 C.M.R. § 491.00 *et seq.* (2001), prior to filing suit in court. Ferreira, 81 Mass. App. Ct. 1114, at *1. The grievance regulations, as required by Mass. Gen. L. c. 127, § 38E, set forth the procedure for the filing, processing and appeal of inmate grievances. See Mass. Gen. L. c. 127, § 38E; 103 C.M.R. § 491.09-491.12. Although the complaint alleges that Cryer exhausted his administrative remedies, (Compl. ¶ 35), neither the complaint nor the exhibits attached thereto indicate that he filed a grievance regarding the alleged violation of 105 C.M.R. §

Accordingly, the Defendants' motion to dismiss Cryer's claims under Mass. Gen. L. c. 124, § 1(q), c. 111 §§2, 5, 20, 21, and c. 127, § 22 and 105 C.M.R. § 451.320 is GRANTED.

**D.     Massachusetts Declaration of Rights Claims**

Cryer seeks relief under articles 1 and 26 of the Massachusetts Declaration of Rights.  Article 1, in relevant part, protects for citizens of the Commonwealth the "right of enjoying and defending their lives and liberties . . . [and] "of seeking and obtaining their safety and happiness . . . ."  Mass. Const. pt. 1, art. 1.  Such protected liberty interests have been compared to the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  See, e.g., Hudson v. Comm'r of Corr., 46 Mass. App. Ct. 538, 543 (1999).  The Supreme Judicial Court has "consistently equated as comparable, both generally and in the prison environment, the due process protections" of the United States Constitution and those provided under Articles 1, 10, and 12 of the Massachusetts Constitution.  Id.  Because the Court has construed Cryer's substantive due process claim under the Fourteenth Amendment as an Eighth Amendment claim, and has allowed those claims to survive the instant motion to dismiss, there is no basis upon which to reach a different conclusion concerning analogous rights protected under the Massachusetts Constitution.  The Defendants' motion to dismiss Cryer's claim for violation of Article 1 of the Massachusetts Constitution is therefore DENIED.[4]

---

451.320 (cell size).  The grievance records attached to the complaint concern only his repeated requests for single cell status.  (Compl., Exs. C, 9, 11, 12).  In failing to submit his claim based on alleged violations of cell size requirements to the requisite grievance procedures, it cannot be said that Cryer has exhausted the available administrative remedies with respect to this claim.

[4]In the complaint, Cryer does not claim relief under the any other provision of article 1. (Compl. at 1; Pl. Opp. at 10).  Although in his opposition to the Defendants' motion to dismiss Cryer states that he seeks redress under article 1 as an equal protection and cruel and unusual punishment claim "as is applied in the 14th and 8th Amendments," he argues that he "only seeks

Cryer further alleges a violation of his rights under article 26 of the Declaration of Rights. Article 26, like the Eighth Amendment of the Federal Constitution, prohibits "cruel and unusual punishments." Mass. Const. pt. 1, art. 26. "[T]he rights guaranteed under art. 26 are at least equally as broad as those guaranteed under the Eighth Amendment." Michaud v. Sheriff of Essex County, 390 Mass. 523, 534 (1983). The "deliberate indifference" standard under the Eighth Amendment applies with equal force to claims brought under article 26. See Abdullah v. Sec'y of Pub. Safety, 42 Mass. App. Ct. 387, 394 (1997) ("[T]o be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement, a prison official must know and disregard an excessive risk to inmate health or safety . . . It would appear that art. 26 of the Declaration of Rights has the same two requirements") (internal citation omitted)); see also Mosher, 589 F.3d at 493 (noting that "a prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment"); Torres v. Comm'r of Corr., 427 Mass. 611, 615-16 (1998) (noting that the art. 26 standard requires assertion that prison official had knowledge of and ignored situation presenting a substantial risk of serious harm). In light of this virtually identical standard and the Court's finding that Cryer has stated a plausible Eighth Amendment claim, the Court finds the complaint sufficiently alleges a claim under article 26 of the Declaration of Rights. The Defendants' motion to dismiss this claim is therefore DENIED.

**E.      Administrative Procedures Act Claim under Mass. Gen. L. c. 30A**

---

to initiate redress . . . [under the language] referring to 'the right of  . . . . defending their lives and liberties' and 'that of seeking and obtaining their safety,'" Pl. Opp. at 10, in responding to the Defendants' argument that he cannot state a claim under the equal protection clause of art. 1. Thus, the Court does not construe Cryer's statement in his opposition as raising an equal protection claim under art. 1.

Cryer alleges that the "double bunking activities" at SBCC is a "policy" that was not promulgated in accordance with the State Administrative Procedures Act, Mass. Gen. L. c. 30A, § 1, and that therefore, the policy is invalid.  (Compl. ¶¶ 29, 47).[5]  This allegation fails as a matter of law.  "The Administrative Procedure Act does not require an agency to promulgate regulations. Rather, it specifies the procedures to be used in promulgating regulations otherwise required." Tedford v. Mass. Housing Fin. Agency, 390 Mass. 688, 694 (1984).[6]  The DOC's enabling statute requires the Commissioner of Corrections to "maintain security, safety and order," Mass. Gen. L. c. 124 § 1(b), and "establish and enforce standards for all state correctional facilities," id. § 1(c). The statute directs the Commissioner to "make and promulgate necessary rules and regulations incident to the exercise of his powers and the performance of his duties including but not limited to rules and regulations regarding nutrition, sanitation, safety, discipline, recreation, religious services, communication and visiting privileges, classification, education, training, employment, care, and custody for all persons committed to correctional facilities." Id. § 1(q).  The statute is "cast in general terms, and does not require promulgation of a specific rule or regulation governing" a particular matter, see Cryer v. Mass. Dep't of Corr., 763 F. Supp. 2d 237, 254 (D. Mass. 2011), such as double-bunking.

Further, the Commissioner is not required to promulgate regulations in connection with every

---

[5]The Defendants do not, and cannot, dispute that the DOC is an "agency" for the purposes of the State Administrative Procedures Act.  See Mass. Gen. L. c. 30A, §1A (noting that the sections one through eight of the Act applies to the DOC "notwithstanding the exclusion of said department from the definition of the word 'agency' in section one").

[6]The APA defines a "[r]egulation" as including "the whole or any part of every rule, regulation, standard or other requirement of general application and future effect, including the amendment or repeal thereof, adopted by an agency to implement or interpret the law enforced or administered by it."  Mass. Gen. L. c. 30A, § 1(5).

decision made in executing his duties under Mass. Gen. L. c. 124, § 1. The Commissioner has wide discretion and authority in maintaining and administering state correctional facilities "as he deems necessary." Mass. Gen. L. c. 124, § 1(a). In carrying out such duties, the Commissioner has the power to issue an "advisory or informational pronouncement. . . without going through the procedures required for promulgation of a regulation." Comm. v. Trumble, 396 Mass. 81, 88 n. 6 (1985) (internal quotation marks and citation omitted); Northbridge v. Natick Dep't of Soc. Servs., 394 Mass. 70, 76 (1985). Similarly, "internal guidelines for carrying out [an agency's] duties" do not need to comply with the procedures under the State Administrative Procedures Act since "such policy statements do not have the legal force of a statute or regulation." Id. (citing cases).

Here, the decision to double bunk cells at SBCC is akin to an informational pronouncement or policy statement that does not constitute a regulation for the purposes of the State Administrative Procedures Act. The complaint attaches a letter dated March 20, 2009, from the acting Commissioner at the time, Harold W. Clarke, explaining the need for double bunking at SBCC. The letter explains that in light of the change to the mission of MCI-Cedar Junction ("MCI-CJ"), MCI-CJ would revert to a medium security prison, while SBCC would become the primary maximum security correctional facility in Massachusetts. (Pl. Opp., Ex. 2). To accommodate such transition, the letter states that inmates housed at MCI-Cedar Junction would be transferred to the SBCC, that "SBCC will have nearly 45% of their general population cells double bunked and 55% single bunked" and that inmates' compatibility with other inmates will be assessed prior to cell placement. (Pl. Opp., Ex. 2). The Commissioner's decision to double bunk less than half of inmates' cells at SBCC only was based on accommodating the influx of inmates from MCI-CJ. Mass. Gen. L. c. 127, § 22 authorizes double bunking cells if the correctional facility is "crowded," which is the case here.

Thus, it cannot be said that the Commissioner's double bunking "policy" constitutes agency rulemaking that triggers the procedural requirements of the State Administrative Procedures Act. See, e.g., Dougan v. Comm'r of Corr., 34 Mass. App. Ct. 147, 148-49 (1993) (finding that DOC's internal transfer manual was not a regulation, but rather "an advisory or informational guideline for the general education of prisoners" for the purposes of the Mass. Gen. L. c. 30A).

Accordingly, the Defendants' motion to dismiss Cryer's claim under Mass. Gen. L. c. 30A is GRANTED.

### F.     Qualified Immunity Does Not Apply

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); see Morse v. Frederick, 551 U.S. 393, 432 (2007) (noting that although a qualified immunity defense applies with respect to a civil action for damages, it does not apply when seeking injunctive relief). Although the Defendants argue that they are entitled to the qualified immunity defense in their individual capacities insofar as Cryer seeks damages (Def. Memo at 18), Cryer does not appear to seek damages in his complaint; he seeks declaratory and injunctive relief only. (Compl., Relief Requested (A)-(F)). The Defendants are, therefore, not entitled to qualified immunity on this basis.

## VI.     Cryer's Motion for Preliminary Injunction

To obtain the extraordinary remedy of a preliminary injunction, a plaintiff must show that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor, and (4) an injunction is in the

public interest. <u>Voice of The Arab World v. MDTV Med. News Now, Inc.</u>, 645 F.3d 26, 32 (1st Cir. 2011).

To show that a preliminary injunction is warranted, the plaintiff must make a greater showing than that required when attempting to defeat a motion to dismiss. <u>See, e.g.</u>, <u>Fritz v. Arthur D. Little, Inc.</u>, 944 F. Supp. 95, 102 (D. Mass. 1996); <u>Broadwell v. Municipality of San Juan</u>, 312 F. Supp. 2d 132, 137 (D.P.R. 2004). In evaluating a motion to dismiss, the Court must accept as true facts alleged in the complaint and "draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949. Moreover, because Cryer is a *pro se* plaintiff, the Court is required to construe the allegations in his complaint liberally. <u>See</u> <u>Haines</u>, 404 U.S. at 520-21 (1972); <u>Rodi</u>, 389 F.3d at 13. However, on a motion for preliminary injunction, in determining whether the plaintiff has demonstrated the four factors noted above, the Court must consider the evidence presented to determine the likelihood of success on the merits. <u>Fritz</u>, 944 F. Supp. at 102. Although the Court has concluded that some of Cryer's claims survive the Defendants' motion to dismiss, it does not necessarily follow that Cryer has demonstrated a likelihood of success on the merits to warrant the entry of a preliminary injunction.

## A. Likelihood of Success on the Merits

Likelihood of success on the merits is the critical element of the four-factor framework. <u>Weaver v. Henderson</u>, 984 F.2d 11, 12 (1st Cir. 1993). In construing Cryer's allegations in the complaint liberally, as discussed in section V *supra*, the Court concluded that Cryer's allegations were sufficient to allege that failure to provide him with single cell status may amount to a violation of the Eighth Amendment or substantive due process under the U.S. Constitution and comparable provisions of the Massachusetts Declaration of Rights. The Court's ruling was largely premised on

the controlling authority that although double bunking is not a *per se* constitutional violation, "in rare cases [the policy of double-bunking] might amount to an unlawful practice when combined with other adverse conditions," see Cote, 152 Fed. Appx. at 6.  However, Cryer has not made a showing sufficient to demonstrate a likelihood of success on the merits of his surviving claims.

As to Cryer's surviving Eighth Amendment claim and related substantive due process claim, he has not shown that this is the "rare case" in which double-bunking when combined with other adverse conditions amounts to an unlawful practice under the Eighth Amendment.  Cryer claims that the Defendants have acted with deliberate indifference with respect to his request for single cell status in light of his mental health issues and the serious harm he alleges he will inflict on an inmate placed in the same cell.  The record presently before the Court, however, shows that Cryer has been denied single cell status because his mental illnesses do not meet SBCC's single cell prerequisites. (Pl. Opp., Ex. 3; Compl. ¶ 20, Ex. C).  Cryer's own complaint alleges that he is being denied single-cell status for this reason.  (Compl. ¶ 19).  "The right to be free from cruel and unusual punishment does not include the right to the treatment of one's choice," Layne v. Vinzant, 657 F.2d 468, 473 (1st Cir. 1981).  Here,  Cryer's treatment of choice for his mental condition is single cell status, but mental health professionals at SBCC have evaluated Cryer's mental condition in determining that a single cell is not warranted.   In April 2009, SBCC's mental health director found that Cryer had not been "contraindicated for double bunking by mental health" while recognizing that his allegations of inflicting serious harm on others if double-bunked presented "significant security concerns" and "should be taken seriously."  Def. Mem., Ex. 1 (April 26, 2009 letter from mental health director to Deputy Mendonsa).  The following year, in his August 10, 2010 letter to Cryer, Deputy Superintendent Anthony Mendonsa explained that after reviewing Cryer's status in IMS,

he found there were no contraindications that would preclude him from double bunking. Pl. Mem., Ex. 3. Mendonsa further stated that he would forward Cryer's correspondence to the appropriate mental health professionals "to ensure that there are no contraindications." Pl. Mem., Ex. 3. SBCC Superintendent Thomas Dickhaut's March 2, 2011 letter responding to Cryer's request for single cell status explained that upon reviewing Cryer's file and consulting with the appropriate mental health personnel, there were "no contraindications or restrictions listed in the Inmate Management System ("IMS") that would preclude [him] from being double-bunked" and for that reason he could not place Cryer on single-cell status at that time. Compl., Ex. C (Letter). In May 2011, another mental health professional reported that at the time she evaluated Cryer, he did not appear to be at imminent risk of hurting himself or others and that he denied having such thoughts. (Def. Mem., Ex. 2 (May 20, 2011 mental health evaluation of Cryer)). In light of the factual allegations in the complaint and the current record, it cannot be said that Cryer has shown a substantial likelihood of success on the merits of his Eighth Amendment claim. Cf. Ferranti v. Moran, 618 F.2d 888, 890-91 (1st Cir. 1980) (finding that allegations that simply reflect a disagreement on the appropriate course of treatment for plaintiff's medical needs does not constitute "deliberate indifference" by prison officials to constitute a cognizable Eighth Amendment claim).

### B. Irreparable Harm

The movant bears the burden of demonstrating that a denial of a preliminary injunction would cause irreparable harm. Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 18 (1st Cir. 1996). As he acknowledges in his affidavit filed in support of his opposition to dismiss, Cryer is currently housed in a cell alone. (Cryer Aff., ¶ 41). Thus, while Cryer alleges a likelihood of harm to himself or any future cell mate if he is double-bunked, it remains the case that he is not

currently double-bunked.

Moreover, Cryer's emergency motion for preliminary injunction is primarily based on his upcoming classification review, which pursuant to DOC policy is held for each inmate at least annually, 103 C.M.R. § 420.09. Cryer's motion is almost exclusively based on the possibility that at the conclusion of his review, currently scheduled for April 5, 2012, see Pl. Mot. at 1, Cryer "will not only be recommended for transfer, but that '[he] will be transferred to a medium security prison' all of which are equipped with [d]orms and [m]ultiple occupancy cells." Pl. Mot. at 1-2. Cryer bases this assertion upon a conversation he had with a corrections officer, nearly two months prior to Cryer's scheduled classification review which has yet to occur. (Pl. Mot. at 1). At base, Cryer argues he is entitled to immediate injunctive relief based on speculation that he may be transferred to a correctional facility that does not have single cell occupancy placements. Where, as here, the moving party claims "a tenuous or overly speculative forecast of anticipated harm," Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 18 (1st Cir. 1996), the entry of a preliminary injunction is not warranted.

### C. Balancing of Hardships

The Court finds that the harm to the Defendants would not necessarily outweigh the harm to Cryer should injunctive relief be granted. Actions of DOC officials "must be evaluated in the light of the central objective of prison administration [and] safeguarding institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979) and cases cited. "Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Id. Although the Court does not necessarily agree with the Defendants that placing Cryer in a single cell

(even if his mental health conditions may not warrant such placement) would alone amount to an undue hardship, the Court agrees that allowing Cryer to single cell status may constitute a waste of available resources by unnecessarily using a single cell in a double-bunked facility and may interfere with the Defendants' efforts in executing policies and practices that in their judgment are needed to preserve internal order, discipline and to maintain security at the facility. Thus, issuing the injunction would impose a hardship, but certainly not an undue hardship or any more significant than that imposed on Cryer should his request for injunctive relief be denied.

### D. Public Interest

The public interest is not served by granting Cryer injunctive relief. Deference should be afforded to the judgment of administrators of correctional facilities on matters of "prison safety, security and discipline," Id. at 547-48. Here, based on their expertise and judgment in these matters including evaluations and input from mental health professionals, the Defendants have determined that Cryer's mental health condition does not require single cell status and, as discussed above, it is not clear that Cryer has a likelihood of success on his remaining constitutional claims. The Court cannot therefore find, at this stage, that Cryer has shown that granting the relief requested would not adversely effect the public interest in having secure and orderly prisons.

In light of the Court's finding that Cryer has not demonstrated a likelihood of success on the merits, that he will suffer irreparable harm or that the public interest is served by granting the injunctive relief requested, Cryer's motion for preliminary injunction is DENIED.

### VII. Conclusion

For the foregoing reasons, the Defendants' motion to dismiss as to the claims under the Equal Protection Clause of the Fourteenth Amendment, Title II of the ADA, Mass. Gen. L. c. 124§

1(q), c. 30A, c. 111 §§2, 5, 20, 21, and c. 127, § 22 as well as to claims allegedly arising under state statutory and regulatory law is GRANTED and as to the claims under the Eighth Amendment, substantive due process under the Fourteenth Amendment, and articles 1 and 26 of the Massachusetts Declaration of Rights, the motion to dismiss is DENIED. Cryer's emergency motion for preliminary injunction is DENIED.

**So ordered.**

/s/ Denise J. Casper
United States District Judge